UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 543 |
| v. | ) | |
| | ) | Judge Milton I. Shadur |
| MARCUS TYMS | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM AND
RESPONSE TO PSR AND DEFENDANT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United

States Attorney for the Northern District of Illinois, hereby submits its response to the Presentence

Investigation Report prepared by Probation on February 6, 2009 ("PSR") and to Defendant's

Sentencing Memorandum, as well as its position on sentencing as follows:

**I.      Background**

On July 23, 2008, defendant Marcus Tyms was charged in a three-count indictment with

enticing a minor to engage in illegal sexual activity, producing child pornography, and transferring

obscene matter to a minor.  On December 5, 2008, defendant pled guilty to Count One of the

indictment pursuant to a written plea agreement.  Sentencing is scheduled for June 29, 2009 at 1:15

p.m. before the Honorable Milton I. Shadur.

**II.     Government's Response to Defendant's Corrections to PSR**

Defendant is correct that phone records do not indicate that the defendant and Victim A

exchanged instant messages for three months, as indicated in the PSR at line 55, but defendant and

Victim A did have continuous contact during that period.  As defendant himself told the arresting

officer, he met Victim A on an online chat service and then contacted Victim A by phone for a few

months afterwards, talking more often, and developing what defendant described as a verbal intimate

relationship.  *See* Exhibit 2 to Government's Response to Defendant's Second Motion to Withdraw Plea (Docket #59).

The fact that the defendant "convinced the victim to meet" is supported by, among other things, the defendant's own statements to the arresting officer.  *Id.* at 1-2 ("Marcus called [Victim A] and wanted to meet up with her.  Marcus told me that this conversation was specifically about Marcus and [Victim A] meeting up to have sex.  Marcus told [Victim A] he wanted to have sex with her.").  The fact that the defendant "ran" when observed by police is supported by the arresting officer's own observations.  *Id*. at 1.

The fact that the defendant hit Victim A in the nose is supported by Victim A's recollection, as well as by a laboratory test that found blood stains on the shirt that Victim A was wearing on the night of September 24, 2007 and that was collected by Carol Stream police shortly after the incident. The government does acknowledge that Victim A did not mention this fact during her initial interviews with medical personnel and law-enforcement agents.  She did describe it in later interviews, however, which were produced to defendant, and her statements were corroborated by the laboratory test.

III.    **Government's Position on Sentencing**

As a matter of process, the district court must properly calculate the Guidelines range, treat the Guidelines as advisory, consider the Section 3553(a) factors, and adequately explain the chosen sentence, including an explanation for any variance from the Guidelines range.  *Gall v. United States*, 128 S. Ct. 586, 596-97 (2007).  Count One of the indictment carries a mandatory minimum sentence of 10 years and a maximum sentence of life.  18 U.S.C. § 2422(b).  As defendant was required to register as a sex offender at the time of his offense, he "shall be sentenced" to a 10-year

term of imprisonment in addition to the "imprisonment imposed for the offense" and which "shall be consecutive to any sentence imposed for the sentence." 18 U.S.C. § 2260A.

###### A.    Guideline Range

The government agrees with Probation's calculation of the offense level for defendant's offense of conviction, with one exception brought about by the defendant's actions after the December 15, 2008 submission of the government's version of the offense. The government disagrees with defendant's position that the cross-reference in Guideline § 2G1.3(c)(1) does not apply in defendant's case. The government also disagrees with defendant's position that an enhancement for the use of a computer does not apply.

###### 1.    Cross Reference to § 2G2.1 Applies

The government agrees with Probation's determination that, pursuant to Guideline § 2G1.3(c)(1), the base offense level for defendant's conviction under 18 U.S.C. § 2422(b) is determined by cross reference to Guideline § 2G2.1, because defendant's offense clearly involved "using, persuading, inducing, [and] enticing" Victim A into creating images of sexually explicit conduct, as well as enticing Victim A into meeting him to engage in illegal sexual activity.

The Guidelines commentary to § 2G1.3 clearly states that this cross reference "is to be construed *broadly*" and covers "*all instances* in which the offense involved ... using, persuading, inducing, enticing ... or seeking by notice ... a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct (emphases added). The cross reference applies when one of the defendant's purposes was to create a visual depiction of sexually explicit conduct, even if that was not his main purpose. *See United States v. Veazey*, 491 F.3d 700, 707 (7th Cir. 2007).

Here, defendant's offense clearly warrants application of the cross reference. From early on in his contacts with Victim A, defendant asked her regularly for photographs of herself. The chats themselves show that he did not merely want to see her face, but wanted pictures of a sexual nature, and indicated that he would be more receptive to her if she sent him the photographs he wanted. In one chat on June 27, 2007, he asked Victim A to send him pictures of herself, writing, "send me pics [and] I might come especially if you show off your body mami." Later in the same chat, he asked if she had a digital camera and "would u take naked pics." After Victim A played a prank on defendant by pretending that she had been shot and then telling him that she would be all right, defendant immediately turned the topic back to pictures, asking her if her friend had "figure out wats wrong with there pic messaging." In another chat beginning on June 28, defendant asked her to send images of child pornography, writing, "you gotta send me pics of your tight pusy and body mami."

Furthermore, in the days leading up to the night of September 24, 2007, when defendant and Victim A finally met, defendant again encouraged Victim A to send him pictures of herself, and offered to send her a photograph of his penis if she did. On September 23, Victim A sent defendant two images at approximately 10:03 p.m. and a third image at approximately 11:19 p.m. The first image focused on Victim A's face. The second is of her lying down, depicting her face and her naked breasts. The third image is focused on her vagina, to the point that only the vagina is visible and no background can be determined.

The next day, in exchange for the images, defendant sent Victim A an image of an erect male penis. At approximately 4:48 p.m., Victim A then sent defendant two images that were focused on her vagina, again so focused that only the vagina is visible and no background can be determined; in one of these images, her fingers are covering or inside her vagina. At approximately 9:28 p.m.,

Victim A sent defendant two more images, one depicting Victim A's face and her naked breasts, and another depicting her naked body without depicting her face.

The images of Victim A were found on defendant's cell phone, and the image of the penis was found on Victim A's phone and the defendant's phone. Defendant's cell phone also contained additional images of vaginas, which appear, based on the titles of the images, to be of two other females.

Defendant argues in his sentencing memorandum that the pictures of Victim A do not qualify as child pornography. Defendant's Sentencing Memorandum at 2, 8-11. First, the three images depicting Victim A's vagina do qualify as child pornography because they are focused on her unclothed genitals and are sexually suggestive, thus involving the "lascivious exhibition of the genitals or public area of any person." As the Seventh Circuit has held, "more than nudity is required to make an image lascivious; the focus of the image must be on the genitals or the image must be otherwise sexually suggestive." *United States v. Griesbach*, 540 F.3d 654, 656 (7th Cir. 2008) (collecting cases).[1]

The Seventh Circuit has not adopted the *Dost* test that is cited by defendant,[2] but the images depicting Victim A's vagina clearly would meet that test in any event. Defendant argues that the images are "no more than nude pictures of portions of [Victim A]'s body," but these images are not

---

[1] Notably, in one of the cases cited by the Seventh Circuit, *United States v. Knox*, 32 F.3d 733 (3rd Cir. 1994), the images did not involve nude children but minors wearing tight, revealing clothing, and were still found to constitute the "lascivious exhibition of the genitals."

[2] Notably, the Ninth Circuit Court of Appeals found that the "standard employed by the district court [in *Dost*] was over generous to the defendant" with respect to certain pictures, *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987) while affirming the *Dost* court's decision that photographs of naked minors that were focused on their genitalia constituted the "lascivious exhibition of the genitals."

random pictures of her unclothed arms or legs. Three images focus entirely on Victim A's genitalia and depict her nude, clearly satisfying two factors of the *Dost* test. *See, e.g., United States v. Villard*, 885 F.2d 117, 122 (3rd Cir. 1989) (applying *Dost* test and stating that it can be satisfied so long as more than one factor is present). Moreover, one of those three images depicts the minor's fingers inside or covering her genitalia, a pose that clearly "suggests sexual coyness or a willingness to engage in sexual activity" or "is intended or designed to elicit a sexual response in the viewer," two more of the *Dost* test's factors. Defendant says that the pictures do not indicate that Victim A was in a suggestive setting or adopted suggestive poses, but the pictures are so clearly focused on her uncovered genitalia that one cannot even determine the overall setting or pose, further highlighting the significance of the images' focus. *See, e.g., United States v. Kemmerling*, 285 F.3d 644, 646 (10th Cir. 2005) (holding that images constitute lascivious exhibitions when "they are of children who are nude or partially clothed, the focus of the images is the child's genitals or pubic area, and their purpose appears to elicit a sexual response from the viewer").

Defendant argues that this case is analogous to *United States v. Villard*, 855 F.2d 117 (3rd Cir. 1989), which involved photographs of naked young boys. However, that case is easily distinguished from the one before this Court. First, *Villard* apparently involved closeup photographs that were of the boy's body and depicted his erect genitals, but the photographs were not necessarily "closeup photographs of the boy's genitals," *id*. at 123, whereas the photographs at issue here are focused on Victim A's unclothed genitals. Second, the *Villard* photographs apparently depicted a boy lying down on a bed or mattress, without much more description, *id*. at 124, whereas the images here are focused on the genitalia and involve one in which Victim A's fingers are covering or are inside the vagina. Finally, and perhaps most significantly, the Third Circuit specifically noted that

the *Villard* images might have satisfied the *Dost* test had the record been more complete, as the government in *Villard* did not present the images themselves as evidence, relying entirely on an agent's testimony describing the images and a videotaped conversation between the defendant and an informant in which they discuss the images.[3] Here, by contrast, the government will present the images at the sentencing hearing so that the Court can make its determination.

Second, even if the victim had not taken any pictures of herself, it is clear that the defendant actively sought out images that would qualify as child pornography. As recognized by the Tenth Circuit in another case where the cross reference was applied, "[t]he conduct the guideline seeks to punish is not only the actual production of child pornography, but the active *solicitation* for the production of such images." *United States v. Garcia*, 411 F.3d 1173, 1179 (10th Cir. 2005) (emphasis added). Defendant did not make some mere request for nude pictures such as what might be found in a medical textbook or in an art museum. Defendant did not happen to get pictures of her vagina when all he wanted was to see her face so that he could recognize her when they finally met. From the beginning of his contacts with Victim A, defendant communicated with the minor in a sexual nature, and he asked over and over for pictures of a sexual nature. The chats, as well as the manner in which defendant used the prospect of an in-person encounter to get the photographs, show that the defendant wanted more than nude photographs, but photographs that meet the definition of sexually explicit conduct. *See United States v. Veazey*, 491 F.3d at 709 (district court

---

[3] "Obviously, if the jury had been able to see the photographs, many of the questions raised [by the district court] would have been answered and a sufficient basis perhaps could have been established for a finding of lasciviousness. This was not the case, however, and [the agent's] brief, sparse description and the only marginally helpful surveillance tape transcripts do not provide evidence sufficient to support a finding that the photographs constituted a 'lascivious exhibition of the genitals or pubic area.'" 885 F.3d at 125.

did not err in applying cross reference after inferring from context of defendant's discussions with minor that defendant wanted photographs depicting sexually explicit conduct, not just nude pictures). *See also United States v. Long*, No. 06-3549, 2008 U.S. App. LEXIS 27030, *9 (3rd Cir. December 31, 2008) (district court did not err in applying cross reference given defendant's instant messages requesting "pics" of the minor). Accordingly, based on the defendant's own conduct, the cross reference would apply even if the defendant had not been successful in causing the victim to take photographs of herself.

The government agrees with the defendant that the Court should consider the context of the photographs (Defendant Sentencing Memorandum at 6), but that context is nothing like what the defendant argues in his sentencing memorandum. This is *not* a case of one teenager "saying hello" to another teenager in a way that older generations would not have done. *See* Defendant Sentencing Memorandum at 7. This is *not* a case of one underage minor sending an arguably provocative picture to another underage minor.[4] This is, instead, a case of a convicted sex offender actively enticing a minor into taking naked pictures of herself in a highly sexualized environment, while knowing that sexual contact between the two would be illegal. This is a case where the defendant asked time and again for naked pictures of the victim, even offering pictures of his own penis in exchange for such pictures. Even if Victim A had not taken any pictures of herself, defendant's repeated efforts to get her to do so, and the way in which he associated her doing so with their

---

[4]    Defendant tries to compare the pictures to the pictures at issue in a "sexting" case that has given rise to a civil lawsuit in the United States District Court for the Middle District of Pennsylvania, *Miller v. Skumanick*, No. 3:09cv540 (M.D. Penn.). But the two pictures specifically addressed in that court's recent temporary restraining order did not show or focus on the minors' genitalia or public area, did not involve nudity, and did not depict sexual activity. *See* Defendant Exhibit A at 6-7.

eventual meeting and sexual contact, warrant the application of the cross reference here.

### 2.      Defendant Used a "Computer" or "Interactive Computer Service" During His Offense

The government agrees with Probation's determination that the offense involved the use of a computer or interactive computer service, namely, a camera cellular telephone, to solicit participation with a minor in sexually explicit conduct, for the purpose of producing sexually explicit material, and that a two-level enhancement accordingly is warranted pursuant to Guideline § 2G2.1(b)(6)(B)(ii).  It is further  the government's position that such a two-level enhancement would also be warranted pursuant to Guideline § 2G2.1(b)(6)(B)(i), since the defendant used his camera cellular telephone to persuade, induce, entice, and solicit Victim A to engage in sexually explicit conduct.

In his sentencing memorandum, defendant argues that Guideline § 2G2.1(b)(6)(B) does not apply because "a cellphone is not a computer, and a cellphone network, better known as a mobile network, is different from an interactive computer service."  Defendant Sentencing Memorandum at 9.  But this argument is premised on a narrow definition of "computer" that is inconsistent with the Guidelines.

As stated in application note 1 to Guideline § 2G2.1, the definition of "computer" for purpose of that Guideline section is that in 18 U.S.C. § 1030(e)(1).  That statute provides an expansive definition of computer:  "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device."  As the Seventh Circuit discussed in *United States v. Mitra*,

405 F.3d 492 (7th Cir. 2005), this definition is "general" and would encompass iPods, wireless base stations, computerized airbags, and, significantly, cell phones. 405 F.3d at 495 (rejecting a defendant's argument that the "computer" definition in 18 U.S.C. § 1030 was not meant to encompass, among other things, cell phones).

The cell phone that the defendant used to commit his offense was an "electronic" "data-processing device" that performed, among other things, "storage functions"; it stored telephone numbers, text messages, and, perhaps most significantly in this case, photographs. Accordingly, that cell phone was encompassed within the broad definition of a "computer," and the network it accessed was an "interactive computer service[5]," and the two-level enhancement pursuant to Guideline § 2G2.1(b)(6)(B) is warranted.[6]

### 3.     Defendant Has Not Accepted Responsibility

While the defendant did plead guilty before this Court and by agreement with the government, the entirety of his post-conviction actions render him ineligible for any credit for accepting responsibility.

First, on December 30, 2008, defendant sent a motion to withdraw his plea and a notice of motion to the Court and to the government by U.S. mail (Docket #47). The government received

---

[5]     As stated in application note 1 to Guideline § 2G2.1, the definition of "interactive computer service" for purpose of that Guideline section is that in 47 U.S.C. § 230(f)(2), which states that the term means "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet."

[6]     Defendant further argues that Guideline § 2G2.1(b)(6)(B)(ii) only applies to situations where a defendant solicits another person to engage in sexual activities with a minor, citing *United States v. Jass*, Nos. 06-4899-cr, 06-4951-cr, 2009 U.S. App. LEXIS 12819 (2nd Cir. June 16, 2009). Even if this were so, the equivalent two-level enhancement would be appropriate under Guideline § 2G2.1(b)(6)(B)(i).

a copy of the motion and notice on January 5, 2009. In his motion, defendant argued that he should be allowed to withdraw his plea because of certain policies of the Metropolitan Correctional Center. This Court denied defendant's motion on January 9, 2009 (Docket #51).

On or about January 22, 2009, defendant sent a letter to the Court claiming that he was "innocent of the charges that have been brought against me." January 22, 2009 Letter at page 1 (Docket #52). The defendant went on to take issue with the government's evidence as to his knowledge that the victim in this case was a minor when he enticed her into having sex with him and when he did have sex with her. The defendant did so while fully recognizing, in his own words, that "the contents of this letter will cause me not to receive the two points of acceptance of responsibility at sentencing." *Id.* at 7-8. While defendant clearly had the right to contest the government's evidence if he had proceeded to trial, defendant did plead guilty and did explicitly acknowledge that he knew that the victim was a minor.[7]

On or about April 21, 2009, defendant formally made a motion to acquit on the grounds on actual innocence. Docket #57. On April 23, 2009, the Court heard argument about the motion. As the Court may recall, the Court then warned the defendant about the consequences of continuing

---

[7]     Defendant's admissions came in the written plea agreement (Docket #46) and during the plea colloquy before this Court. In the plea agreement, defendant acknowledged that he was pleading guilty "because he is in fact guilty of the charge contained in Count One of the indictment." Plea Agreement at 2. Moreover, he specifically admitted in the plea agreement that, "During the course of his conversations with Victim A, defendant persuaded, induced and enticed Victim A into meeting him to have sex. During the course of defendant's conversations with Victim A, Victim A stated that she was 13 years old, and defendant acknowledged that Victim A was a minor. Victim A was, in fact, 13 years old at the time." During the plea colloquy, defendant stated that he had communicated with the victim, exchanged pictures with her, and had sex with her, all while knowing that she was not yet 18 years old. *See* Transcript of December 5, 2008 change of plea (Exhibit 1 to Government's Response to Defendant's Second Motion to Withdraw Plea, Docket #59) at 23.

with the motion, specifically telling the defendant that the entry of a guilty plea was a "step" towards acceptance of responsibility but was "not conclusive," and that acceptance of responsibility could be risked by a defendant's post-conviction conduct. The defendant continued with his motion, and the Court then denied it. Docket #60.

On or about May 6, 2009, defendant sent a *pro se* motion, captioned "Motion to Prove Applicable Jurisdiction," to the Court, challenging the jurisdiction of this Court and claiming that he was "as foreign as a non-resident alien to the District of Columbia's federal government as likewise to Russia." Docket #62. The Court denied this motion on May 11, 2009 without a hearing. Dockets #63-64. In denying the motion, the Court noted that the defendant "would do well to confer with his appointed counsel as to the prospect that the course of conduct that he has undertaken can cause him to lose the benefit of the two-level offense reduction for 'acceptance of responsibility' in this Court's calculation of the advisory Sentencing Guideline range." Docket #64 at 2.

It is the defendant's burden to demonstrate that he is entitled to a reduction for acceptance of responsibility under Guideline § 3E1.1. *See United States v. Gordon*, 495 F.3d 427, 431 (7th Cir. 2007). Simply pleading guilty to the indictment is not sufficient to earn an acceptance reduction. *Id*. ("A defendant who enters a guilty plea prior to trial is not entitled to an adjustment for acceptance as a matter of right.). As noted in the application notes to Guideline § 3E1.1:

> Entry of a plea of guilty prior to the commencement of a trial combined with truthfully admitting the conduct comprising the offense of conviction ... will constitute significant evidence of acceptance of responsibility for the purposes of [U.S.S.G. § 3E1.1(a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under [U.S.S.G. § 3E1.1] as a matter of right.

As noted in the PSR, the government did not consider defendant's initial motion to withdraw his

plea (Docket #47) entirely inconsistent with acceptance of responsibility. PSR at 6. However, the entirety of defendant's post-plea conduct - his first motion to withdraw his plea, his refusal to cooperate with Probation's investigation, his false claim of actual innocence in his January 22, 2009 letter to the Court, his second motion to withdraw his plea, and his motion challenging the Court's jurisdiction - outweighs his guilty plea in terms of his acceptance of responsibility, especially given the warnings he received and the risks he fully accepted. *See, e.g., United States v. Silvious*, 512 F.3d 364, 370 (7th Cir. 2007) (district court did not clearly err when it did not grant a defendant a reduction for acceptance of responsibility when defendant claimed innocence after pleading guilty).

Accordingly, the government's position is that defendant is no longer entitled to any reduction in offense level for acceptance of responsibility.

### 4. Guideline Range Calculation

The government's offense level calculation thus is as follows:

| | | |
|---|---|---|
| Base offense level | 32 | §§ 2G1.3(c)(1), 2G2.1 |
| Offense involved minor who had attained age of 12 years but not 16 years | +2 | § 2G2.1(b)(1)(B) |
| Offense involved commission of sexual act | +2 | § 2G2.1(b)(2)(A) |
| Offense involved: (a) use of computer or interactive computer service to solicit participation with a minor in sexually explicit conduct, for purpose of producing sexually explicit material, and/or (b) use of computer or interactive computer service to persuade, induce, entice, or otherwise solicit participation by a minor in sexually explicit conduct, for purpose of producing sexually explicit material | +2 | § 2G2.1(b)(6)(B)(ii) and/or § 2G2.1(b)(6)(B)(i) |
| *TOTAL* | *38* | |

The government agrees with Probation's determination that defendant is criminal history category II, based on (a) his 2005 conviction for indecent solicitation of a child, and (b) his

committing the instant offense while under a criminal justice sentence.

Accordingly, the government's position is that the Guideline range for defendant's offense of conviction is 262 to 327 months. The government notes that the defendant, as a registered sex offender, is subject to a mandatory 10-year, consecutive sentence *in addition to* the sentence imposed for his offense of conviction.

### B.    Nature and Circumstances of the Offense

As described more fully in the government's version, defendant's offense is extremely serious. Defendant deliberately set about to entice a young girl into having sex with him, doing so by describing himself as a "guy dats sweet pssionate romatic physical has a high sex drive and loves make a lady feel good" (June 23, 2007 chat), engaging in much talk of an explicitly sexual nature, and indicating that he would be her boyfriend if they had sex. Defendant continually asked her to take naked photographs of herself, and finally convinced her to do so. He then met the victim in order to have sex, hit her when she had last-minute doubts, and abandoned her when observed by the local police.

This is an offense that defendant knew was wrong and that he nonetheless deliberately chose to do. Defendant clearly knew that what he was doing was a crime, as he had already been convicted once before for very similar conduct in 2005. Even more shocking is that defendant had re-registered as a sex offender because of that crime *just hours* before meeting Victim A in person. The chats from that 2005 offense showed that defendant knew even then that what he was doing was wrong,[8] as he admitted in a post-arrest interview.

---

[8]    In a September 2, 2005 chat with the undercover police officer in that case, defendant told "Ashley" to not tell anyone about him because "ur still a minor and by law im not suppose to do anything sexual to u legally till ur 17 or 18." *See* Government's Verison at 7.

Moreover, defendant had plenty of opportunities to withdraw from his crime, but failed to do so. This was not a momentary lapse of judgment, and this was not a simple "mistake" or "accident" as he claimed in his January 22, 2009 letter to the Court (Letter at 5), but a crime that defendant committed to doing for a long period of time. His offense began with chats on June 23, 2007, and continued via more chats, telephone calls, and text messages over the next four months before it culminated on September 24 and 25, 2007, when the victim sent naked photographs of herself to the defendant, and when the defendant and the victim had sex. Defendant could have walked away from his crime at any time before September 24 and 25, but he did not.

Instead, when the victim first informed the defendant in their very first chat that she was "only 13," defendant did not end the conversation or switch the topic away from his "high sex drive." He simply responded "oh do age bother you mami" and quickly turned to a discussion of oral sex. The next day, when she asked him, "Y u wanna fuck a 13teen [13] yr old," he simply responded, "it not cuz u 13 it cuz u sound hot." Defendant continued to entice Victim A for several months, developing what he told an arresting officer was a verbal intimate relationship with her. *See* Exhibit 2 to Government's Response to Defendant's Second Motion to Withdraw Plea.

Defendant's offense has had consequences beyond himself. Victim A thought of the defendant as a potential boyfriend, only to have him take advantage of her physically and emotionally. She even blamed herself initially for defendant's arrest and considered committing suicide. Victim A had problems with her mother and school prior to defendant's offense, and defendant's offense — taking advantage of Victim A's vulnerability and lack of a stable support — has made those situations worse. The government expects that Victim A will read a statement at the sentencing concerning the impact of defendant's crimes on her.

15

### C.    History and Characteristics of the Defendant

Defendant was 23 years old when he committed the offense of conviction and is now 24 years old, an age when many people are looking forward to opportunities that largely will be denied him because of his offense and because of the long sentences mandated by statute and recommended by the Guidelines.  But what defendant has done with the past few years shows what kind of a person he is and only reinforces the need for a Guideline sentence to deter additional criminal conduct and to protect society from him.

Defendant was 21 years old when he committed a very similar offense, attempting to entice a person he believed was only 12 years old for sex.  The Court saw excerpts of those chats in the government's version (pages 5-8) and in its pre-trial Rule 404(b) notice, and therefore knows how heinous and brutal defendant's intentions were towards that 12-year-old girl.  Indeed, it was the fact that the girl appeared particularly young and innocent that drove defendant in those chats. Defendant was convicted for the offense and received a sentence of probation, which was light compared to the 10-year minimum sentence that he would have received had he been charged federally.  But rather than setting his life on a better path, defendant failed to take advantage of the opportunity given him and resumed the same conduct as before.  Defendant clearly recognized his responsibilities, and brazenly re-registered as a sex offender even while planning to complete the same crime that he had done before.

Moreover, as described in the government's version of the offense and in the government's Rule 404(b) notice, there is much evidence that the defendant was engaging or attempting to engage in similar conduct to both the 2005 offense and to the offense of conviction each time that he was caught.  When he was caught in November 2005, he admitted to the Cook County Sheriff's

Department that he had always liked younger girls, and admitted to having two friends who were underage girls and whom he had "met" in person. And the AirG chats that showed defendant's enticement of Victim A in 2007 also showed that he had been attempting to entice at least two other underage girls at the same time.

When seen in connection with these incidents, defendant's own January 22, 2009 letter to the Court shows that defendant was a habitual offender who, fortunately, happened to be caught now rather than later, after inevitably harming still more children. In his letter, defendant argued in effect that he had similar conversations with so many other females that he could not specifically recall Victim A. The AirG chats do show that defendant was trying to have sex with many females, including some that were 18 years or older, but they also show clearly that what happened with Victim A was not an isolated event. As described in the government's version (pages 8-10) and in the government's Rule 404(b) notice, those chats show that he attempted to entice at least two other minor girls and that he simply did not care about the age of the females he was trying to have sex with. All of this demonstrates that there is a high risk of the defendant re-offending, and demonstrate the importance of a Guideline-range sentence to protect society from his doing so.

It should be noted that the defendant did spare the victim the ordeal of going through a trial through his guilty plea. But, given the defendant's post-conviction conduct and his demonstrated lack of remorse, that should count very little in terms of mitigation. In his January 22, 2009 letter, he argued at length that he did not know that Victim A was a minor during the course of his crime, contradicting his own sworn statements to this Court, his own chats with Victim A, and the consciousness of guilt demonstrated by his unsuccessful attempt to evade arrest on September 25, 2007. If defendant had his way, he would still make Victim A go through a trial, and his references

17

to her as "the alleged victim" throughout his letter show that he still does not recognize that what he did was wrong.

Finally, defendant's repeated efforts to escape the effect of his conviction through attempted manipulation of the law should not be ignored in his sentencing. First, he made a nearly frivolous motion to withdraw his plea on the basis that he could not call his parents before entering his plea. Once that failed, he made a motion to withdraw his plea based on a claim of actual innocence, based on nothing more than quibbles with the government's evidence. Once that too failed, defendant made a motion challenging the jurisdiction of this Court and claiming that he was "as foreign as a non-resident alien to the District of Columbia's federal government as likewise to Russia." Defendant's Motion to Prove Application Jurisdiction at 2. Ignoring these efforts would not promote respect for the law, and would encourage other defendants to make similar arguments. Accordingly, the sentence should reflect the Court's disagreement with the defendant's attempts to manipulate legal authority for his own ends. *See United States v. Sanner*, 565 F.3d 400, 404 (7th Cir. 2009) (finding no clear error in district court's imposition of a sentence 18 months above the Guideline range in part because of the defendant's "self-serving effort to come up with something that he could advance in a hopeless quest to win an acquittal somehow in this case" and to signal the court's "very strong disagreement with the defendant's manipulation of legal authority for his own ends").

### D. <u>Need to Avoid Unwarranted Sentence Disparities</u>

Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater

than necessary," to comply with the purposes of sentencing.[9]  In order to determine the "particular" sentence to impose, the court must consider the familiar statutory factors listed in § 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements.  § 3553(a)(4), (a)(5).  Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, — U.S. — , 128 S. Ct. 586, 596 (2007).  For two reasons, this Court should give serious consideration to the advisory Guidelines range.

First, the Sentencing Guidelines are the *sole* factor in § 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily-mandated factor, § 3553(a)(6).  *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."); *see also Booker v. United States*, 543 U.S. 220, 250 (2005) ("Congress' basic statutory goal – a system that diminishes sentencing disparity"); *id.* at 253 ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity"); *id.* at 267 (rejecting other remedial alternatives because they were inconsistent with the "basic objective of promoting uniformity in sentencing").  The Supreme Court created the advisory system to "continue to move sentencing in

---

[9]     Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  § 3553(a)(2)(A)-(D).

Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker*, 543 U.S. at 264-65. The only way to prevent widespread unwarranted disparities is to give serious consideration to the Guidelines.

Second, the Guidelines generally deserve serious consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 128 S. Ct. at 594. It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007),[10] and that there is "broad" sentencing discretion post-*Booker*. *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology; its judgments should not lightly be disregarded." *United States v. Wachowiak*, 496 F.3d 744, 753 (7th Cir. 2007) (internal quotation and citation omitted). Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 994(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

In the event that this Court exercises its discretion to sentence outside the advisory range, there are guideposts for evaluating what the extent of the deviation should be and when a non-Guidelines sentence will be deemed unreasonable on appeal. These guideposts are set forth in

---

[10]    Although the Seventh Circuit has held that Guidelines 'departures' are no longer relevant after *Booker*, it is true that the Supreme Court referred multiple times to 'departures' from the Guidelines, as a category distinct from § 3553(a) variances, in *Rita*, 127 S. Ct. at 2461, 2465, 2468 (2007). However, even after *Rita*, the Seventh Circuit has continued to express the view that departures are obsolete. *United States v. Dale*, 498 F.3d 604, 611 n.6 (7th Cir. 2007).

Supreme Court and Seventh Circuit cases.

First, the Supreme Court instructs that it is "clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall*, 128 S. Ct. at 594. The degree of the deviation from the advisory Guidelines range is relevant in choosing the particular sentence:

> If [the judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.

*Id.* at 597. In *Gall*, the Supreme Court affirmed a sentence of probation in an Ecstasy conspiracy case where the low-end of the range was 30 months of imprisonment. Although the Court acknowledged the qualitative difference between probation and a sentence of imprisonment, the defendant presented extensive mitigating facts: his only role in the crime was to deliver drugs to other co-conspirators; he had voluntarily stopped distributing drugs "after deciding, on his own initiative, to change his life," which distinguished him from the "vast majority of defendants convicted of conspiracy"; after withdrawing from the drug conspiracy, he graduated from college and obtained steady employment; when confronted by law enforcement agents, he fully confessed to the crime; when indicted, he moved back to the district in which he was charged and started his own successful business; and he proffered a "small flood" of letters praising his character and work ethic. *Id.* at 591-93, 599-600.

In contrast to the significant and uniquely-personal mitigating facts in *Gall*, the Seventh Circuit warns that major deviations from the advisory range are more likely to be unreasonable if

the grounds for the deviation are "overstated mitigating factors" or "normal incidents" of the offense. *Wachowiak*, 496 F.3d at 754. Similarly, the Seventh Circuit admonishes that sentences relying on "common" factors, rather than "particularized" ones, to justify variances are less likely to be substantively reasonable. *Id.* at 750. To be sure, these are only guides and not bright-line rules for assessing reasonableness, but they are helpful in preventing excessive sentencing disparities.

The bottom line is that every case is different. Every case has aggravating factors, and/or mitigating factors, that each district court judge considers in imposing what that judge believes to be a reasonable sentence. This is one of the reasons why the Sentencing Guidelines are important: to provide a baseline that will help courts gauge the seriousness of the offense conduct, and then weigh that along with the Section 3553 factors to determine a reasonable sentence. *U.S. v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) (when Guidelines are followed, sentencing disparities are minimized); *see also United States v. Miller*, 450 F.3d 270, 275-76 (7th Cir. 2006) (same).

Here, defendant refused to talk with Probation as it prepared the PSR and brashly protested his innocence in his January 22, 2009 letter to the Court, all of which indicates that defendant continues to have the misguided sense that he is being persecuted unjustly and that he is the victim here. But, as defendant's own words and actions show, he knew what he risked when he chose to commit this crime. And he *earned* the base offense level for his offense as well as each of the specific offense enhancements he received. His actions are clearly within the norm for the offense for which he was charged and convicted, and thus the Guidelines for that offense are fully appropriate. And had defendant not pressed Victim A for photographs of herself, his base offense level would have been lower. Had Victim A been older, there would be no two-level enhancement because of her age. Had he not had sex with Victim A on September 24, 2007, there would be no

22

two-level enhancement for that. Had he had not used a camera cellular telephone to solicit Victim A, there would be no two-level enhancement for that. Defendant's Guidelines range in this case is based on defendant's own conduct, and the best way to avoid unwarranted sentencing disparities is to sentence defendant within the Guidelines that apply specifically to the facts of his case.

### E. Confessional Intent

Lastly, the government directs this Court's attention to 18 U.S.C. § 3553(b)(2). According to this provision, when sentencing defendants for crimes involving children and sexual offenses, the district court "shall impose a sentence" within the calculated Guideline range. The Seventh Circuit has determined that this provision possesses the same Sixth Amendment defect as Section 3553(b)(1) by mandating a sentence within the range recommended by the Sentencing Guidelines. *See United States v. Griggs*, 442 F.3d 560, 563-64 (7th Cir. 2006). Although the Seventh Circuit has held that Section 3553(b)(2) cannot constrain the discretion of a district court to impose a sentence outside the Guideline range, the Court of Appeals "nevertheless believe[s] that district courts, in the course of selecting an appropriate sentence, ought to give respectful attention to Congress' view that crimes such as [those involving child pornography] are serious offenses deserving serious sanctions." *Id.* at 564-65. *Cf. United States v. Glover*, 479 F.3d 511, 521-22 (7th Cir. 2007) ("This Court has observed that *Booker* does not affect 28 U.S.C. § 994(h), which calls for career offenders to be sentenced at or near the statutory maximum.").

23

Respectful attention to Congress's view further supports this Court's imposing a sentence within the Guidelines range of 262 to 327 months, along with a consecutive sentence of 10 years as mandated by 18 U.S.C. § 2260A.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney


By:     /s/ Stephen Chahn Lee
        STEPHEN CHAHN LEE
        JULIE BURNHAM RUDER
        Assistant United States Attorney
        219 South Dearborn, 5th Floor
        Chicago, IL 60604
        (312) 353-4127

Dated: June 26, 2009

24

## <u>CERTIFICATE OF SERVICE</u>

The undersigned Assistant United States Attorney hereby certifies that the following document:

GOVERNMENT'S SENTENCING MEMORANDUM AND
RESPONSE TO PSR AND DEFENDANT'S SENTENCING MEMORANDUM

was served on June 26, 2009, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

By:     /s/ Stephen Chahn Lee
STEPHEN CHAHN LEE
Assistant United States Attorney
219 South Dearborn Street, 5th Fl.
Chicago, Illinois 60604
(312) 353-4127