IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE UNITED STATES OF AMERICA,    ) DOCKET NO. 08 CR 543
                                 )
                     Plaintiff,) 
                                 )
    vs.                          )
                                 )
MARCUS TYMS,                     ) Chicago, Illinois
                                 ) December 5, 2008
                     Defendant.) 1:15 o'clock p.m.


        TRANSCRIPT OF PROCEEDINGS BEFORE THE HONORABLE
               MILTON I. SHADUR, Judge

APPEARANCES:

For the Plaintiff:
                 MS. JULIE B. RUDER and
                 MR. STEPHEN C. LEE

For the Defendant:
                 MR. J. CLIFFORD GREENE


                 JESSE ANDREWS
     Official Court Reporter - U. S. District Court
               219 S. Dearborn Street
               Chicago, Illinois  60604
                 (312) 435-6899

          *     *     *     *     *     *

1          THE COURT:  Do you want to bring Mr. Tyms out,

2 please?

3           All right.  This is 08 CR 543, United States

4 against Marcus Tyms.

5          Counsel, do you want to reflect your appearances,

6 please?

7          MR. LEE:  Yes, your Honor. Stephen Lee and Julie

8 Ruder for the the United States.

9          MS. RUDER:  Good afternoon, your Honor.

10          MR. GREENE:  Good afternoon, your Honor.  J.

11 Clifford Greene on behalf of Mr. Tyms, who is present and in

12 custody.

13          THE COURT:  Good afternoon.

14          I just had delivered to me, and I have reviewed,

15 the draft plea agreement that at that point had been

16 executed by the United States Attorney and by the Assistants

17 here, and by Sergio Acosta on behalf of United States

18 Attorney Fitzgerald.  Has that plea agreement now been

19 signed by defense counsel and the defendant?

20          MR. GREENE:  Yes, sir.

21          MR. LEE:  I have the signed original.  We have made

22 one change.

23          THE COURT:  What's that?

24          MR. LEE:  On the bottom of page 9 there is a

25 typographical error.

1    THE COURT:  Wait just a minute.

2    (Pause)

3    THE COURT:  It should be "recommend" instead of

4 "commend?"  Is that your suggestion?

5    MR. LEE:  Yes, your Honor.  And we have made the

6 change on the document, and I have signed it as well.

7    THE COURT:  Hand that, please, to Jesse.

8    MR. LEE:  Yes.

9    (Document tendered)

10    THE COURT:  Mr. Tyms, is this your signature?

11    DEFENDANT TYMS:  Yes.

12    THE COURT:  Mr. Greene, it's yours?

13    MR. GREENE:  Yes, sir.

14    THE COURT:   Ms. Ruder, it's your signature here?

15    MS. RUDER:  It is, your Honor.

16    THE CLERK:  And yours, Mr. Lee?

17    MR. LEE:  Yes, it is.

18    THE COURT:  And Sergio Acosta I recognize.  I think

19 he's applied to become a banker.

20    (Laughter)

21    THE COURT:  Mr. Tyms, as I am sure Mr. Greene has

22 explained to you, plea agreements do not take effect

23 automatically.  On the contrary, the Court has a special

24 responsibility to make an independent determination about

25 three things.  Essentially, first of all, is to make sure that

1  any plea agreement is voluntary.  And second is to make

2  sure that the plea agreement is entered into with full

3  understanding of what's involved in entering a guilty plea, as

4  contrasted with the other alternative, which is what we had

5  been planning to do, which was to have a trial beginning on

6  Monday.  And the third thing, which has at least equal

7  importance, is to make certain that the defendant is prepared

8  to acknowledge the things that the government charges in

9  the count -- in this case it's one count -- to which you are

10  proposing to plead guilty.

11          Now because I have to make that kind of

12  determination, it's necessary to ask a number of questions.

13  Lawyers and judges don't think they are technical, but human

14  beings do.  And if there is anything about any of these

15  questions that puzzles you, or you are not sure what the

16  question may mean or call for, or if there is

17  anything that you are wondering should you really be answering

18   this question, don't hesitate.  We can stop and let you

19  confer with your lawyer again, because it's very

20  important that you answer each question truthfully.  And not

21  the least of the thing that is important is that failure to

22  give a truthful answer to a question, once the oath is

23  administered, can give rise to penalties of perjury or making

24  a false statement, which is of course a whole separate federal

25  crime.  Do you understand that?

1         DEFENDANT TYMS:  Yes, sir.

2         THE COURT:  Okay.  So now I am going to swear you

3 in.  And what that means is that when you start answering

4 these questions you are going to be testifying.  Do you

5 recognize that?

6         DEFENDANT TYMS:  Yes, sir.

7         THE COURT:  Okay.  Do you want to raise your right

8 hand, please?

9   (Defendant sworn)

10        THE COURT:  You have to speak up, by the way.  And I

11 don't know whether you want to get up to the mike,

12 because that's hooked up with Jesse's equipment here.  Fine.

13        How old are you?

14        DEFENDANT TYMS:  24.

15        THE COURT:  And how far did you go in school?

16        DEFENDANT TYMS:  I graduated high school.

17        THE COURT:  Before you were taken into custody, were

18 you working?

19        DEFENDANT TYMS:  Yes, sir.

20        THE COURT:  What kind of work were you doing?

21        DEFENDANT TYMS:  I was working overnight stock at

22 Jewel.

23        THE COURT:  Overnight what?

24        DEFENDANT TYMS:  Overnight stock at Jewel.

25        THE COURT:  And what did that kind of work consist

1 *of?*

2      *DEFENDANT TYMS:  It consisted of stocking, facing,*

3 *bringing product from the backrooms, filling shelves,*

4 *ordering, and whatnot.*

5      *THE COURT:  At any time in the past, and including*

6 *up to now, have you ever had occasion to get professional help*

7 *of the kind provided by a psychiatrist or psychologist, or*

8 *have you ever been involved in any kind of voluntary program*

9 *having to do with matters of mental health?*

10      *DEFENDANT TYMS:  At one point I took a*

11 *psychological -- I took a sex offender evaluation.*

12      *THE COURT:  Did that result in counseling, or was*

13 *that simply an evaluation?*

14      *DEFENDANT TYMS:  It was simply an evaluation that I*

15 *never got the results of because I didn't have the money for*

16 *it.*

17      *THE COURT:  Okay.  I am going to ask you a similar*

18 *question, not as to whether you have ever had occasion to use*

19 *any controlled substances, but have you ever had occasion,*

20 *either in the past or up to now, to get either treatment or be*

21 *involved in any kind of voluntary program having to do with*

22 *what's called substance abuse, either the excessive use of*

23 *alcohol or the use of any narcotic?*

24      *DEFENDANT TYMS:  No, I have never had to take that.*

25      *THE COURT:  During the last couple of days (I know*

1 that you have been over at the MCC) have you had

2 occasion to take any kind of medication or pills or drugs of

3 any kind, whether it's under doctor's prescription or

4 otherwise?

5         DEFENDANT TYMS:  No, sir.

6         THE COURT:  Mr. Greene, do you have any question at

7 all as to your client's competence to plead if he so chooses?

8         MR. GREENE:  None, Judge.  No reservations.

9         THE COURT:  I know the government doesn't

10 have basically direct contact of the same kind of course with

11 a defendant, but is there anything about your handling of the

12 case that has given you any pause as to whether Mr. Tyms is

13 competent to plead if he chooses to do so?

14         MR. LEE:  No concern from the government.

15         MS. RUDER:  I agree, Judge.  There are no concerns.

16         THE COURT:  I will then find that Mr. Tyms is

17 competent to plead if he so elects.

18         Have you gotten a copy of this indictment, and have

19 you fully discussed the charges in your case in general with

20 Mr. Greene as your lawyer?

21         DEFENDANT TYMS:  Yes, sir.

22         THE COURT:  Are you fully satisfied with the

23 representation, the counseling, the advice that you are

24 getting from him?

25         DEFENDANT TYMS:  Yes, sir.

1        THE COURT:  You told me that you signed a plea

2  agreement.  Did you have the full opportunity to read and to

3  discuss with Mr. Greene what the content was of the plea

4  agreement before you signed it?

5        DEFENDANT TYMS:  Yes, sir.

6        THE COURT:  So far as you know, are there any

7  understandings -- formal, informal, written, unwritten -- as

8  between you and your lawyer on the one hand and the

9  the government on the other that are not in the plea

10  agreement?  I am asking whether to your understanding the plea

11  agreement is the entire deal that you have with

12  the government?

13        DEFENDANT TYMS:  Yes, sir.

14        THE COURT:  Mr. Greene, any side agreements of any

15  kind -- formal, informal, written, unwritten?

16        MR. GREENE:  No, sir.

17        THE COURT:  From the government's point?

18        MR. LEE:  No side agreements, your Honor.

19        THE COURT:  Has anybody made any kind of promise or

20  assurance to you that's not contained in the plea agreement

21  in order to try to persuade you to accept it?

22        DEFENDANT TYMS:  No.

23        THE COURT:  Has anybody threatened you or in any way

24  forced you in order to try to persuade you to sign the

25  agreement?

1          DEFENDANT TYMS:  No, sir.

2          THE COURT:  Now we have these two other counts, as

3 you know.  But the understanding is that those will be

4 dismissed at the time of sentencing.  So put those counts

5 aside for a minute.  Has anybody told you that if you didn't

6 sign the plea agreement, the government would bring any other

7 charges against you or would take any other unfavorable action

8 against you?  In other words, has the government said, "If you

9 don't sign this one, we reserve the right, we are going to

10 charge you with something else," or "We are going to add

11 another charge or take other steps against you or unfavorable

12 to you"?  Do you want to talk to Mr. Greene about that?  Go

13 ahead.

14     (Pause)

15          DEFENDANT TYMS:  No, sir.

16          THE COURT:  Now up to now I have been asking you

17 about the plea agreement as an agreement.  I want to ask you a

18 similar set of questions about your decision to plead guilty.

19 That is, has anybody either threatened you or tried in any way

20 to force you to plead guilty?

21          DEFENDANT TYMS:  No.

22          THE COURT:  Anybody make any promises or assurances

23 of any kind other than those that are in the plea agreement in

24 order to try to get you to plead guilty?

25          DEFENDANT TYMS:  No.

1        THE COURT:  Anybody tell you that if you didn't

2 plead guilty the government would bring any other charge or

3 take any other unfavorable action against you?

4        DEFENDANT TYMS:  No.

5        THE COURT:  Is it then fair to say that you are

6 proposing to plead guilty, that's being done of your own free

7 will because you believe that you are guilty?

8        DEFENDANT TYMS:  Yes, sir.

9        THE COURT:  Do you know what the maximum possible

10 punishment is in connection with this charge that you are

11 proposing to plead guilty to, this Count 1?

12        DEFENDANT TYMS:  From what I remember from the

13 Magistrate Judge reading off the charges and the penalties

14 that it carries a term of ten years to life imprisonment.

15        THE COURT:  That's on the count.  And in addition to

16 that, do you understand that there is also a mandatory

17 consecutive sentence that tacks onto that another 10

18 years because of the fact that you have been required

19 to register as a sex offender?

20        DEFENDANT TYMS:  Yes, sir.

21        THE COURT:  So that means that over and above

22 whatever sentence comes out in connection with this count,

23 another ten years is going to be tacked onto that?  Do you

24 understand that?

25        DEFENDANT TYMS:  Yes, sir.

1          THE COURT:  Do you also understand that the law sets

2    up as a ceiling in terms of a fine, as much as $250,000,

3    although of course the Court can't just pick a number and say

4    you have got to pay it.  In connection with any fine, we are

5    obligated to find out what your assets are and what you might

6    be in a position to pay.  But you understand the law permits a

7    very substantial fine as well?

8          DEFENDANT TYMS:  Yes, sir.

9          THE COURT:  Very importantly, you know that there is

10   also a provision of what's called supervised release.

11   And supervised release for this kind of offense has to be at

12   least a 5-year period, and can be as long as a life period.

13   And supervised release has some very special and very

14   particular provisions.  And one of them is that because

15   conditions are set up that you have to satisfy in connection

16   with the period of supervised release, if you were to violate

17   any of those conditions the government doesn't have to go back

18   to a jury -- grand jury -- and say, "Let's get an indictment

19   for these."  Instead what the government can do is to file a

20   motion that says there has been a violation of the conditions

21   of supervised release.  And then if the government has done

22   that, the matter gets decided not by a jury, as is true in a

23   criminal prosecution, but by the judge, not me -- you know,

24   you are looking at a long term here -- but before some judge.

25   And very importantly, unlike a criminal prosecution which we

1  will talk about in a few minutes, where the determination of

2  whether somebody has committed an offense has to be

3  demonstrated by proof beyond a reasonable doubt, if it comes

4  to violation of conditions of supervised release, the test is

5  the same as it is in an ordinary civil case.  If somebody

6  doesn't pay for an automobile, gets sued, the test is you have

7  got to show that by what's called a preponderance of the

8  evidence -- that is, it is more likely that the person did

9  something than not.  And yet, despite the fact that it's much

10 simpler to establish, from the prosecution side of it, the

11 violation of supervised release can end up with an imposition

12 of more time in custody.  Do you understand that?

13      In other words, the violation of the conditions of

14 supervised release are very important and have to be complied

15 with, because if they are not, a person after having served

16 his full term can be taken back into custody.

17      Do you understand that?

18      MR. GREENE:  Can we have a minute, Judge?

19      THE COURT:  Why don't you confer about that.

20   (Pause)

21      MR. GREENE:  Your Honor, he raises a good question,

22 Judge.  And that is, in some of these cases -- some cases --

23 one of the conditions of supervised release may be that you

24 find a job.  Now he's a registered sex offender.

25      THE COURT:  Well, wait.  Now wait.  Not before me.

1 I mean what I impose in a situation in which a person is

2 unemployed is that the person will either be employed or seek

3 employment.

4 MR. GREENE:  Yes.

5 THE COURT:  So that nobody violates supervised

6 release by reason of getting out of a job.  Certainly not in

7 today's market.

8 MR. GREENE:  I understand that, Judge.

9 THE COURT:  That's always my -- the only thing that

10 I ever do in connection with the employment situation is what

11 I have just described.

12 MR. GREENE:  I think the tenor of his question

13 though, or his concern, is because of his status, because of

14 his past and this crime, he is going to seek employment.  But

15 he feels that it's a good possibility that they will be

16 slamming the door in his face over and over again.

17 THE COURT:  And as long as he is seeking

18 employment in good faith, as far I am concerned that's the

19 only kind of condition that I impose.

20 MR. GREENE:  Very well.

21 THE COURT:  So you understand that?

22 DEFENDANT TYMS:  Yes.

23 THE COURT:  Now you do understand though that one of

24 the provisions of the law in connection with this kind of

25 offense is that one of the conditions of supervised release is

1 that you report your residence address and any changes of

2 address to the probation officer who is assigned to the case.

3 And that also calls for registration as a sex offender in any

4 state where you happen to be residing. So I know you have

5 registered up to now here. But if you were to move you would

6 have the same obligation. Do you understand that?

7           DEFENDANT TYMS: Yes, sir.

8           THE COURT: You also understand that one of the

9 agreements that you have entered into is that you are going to

10 participate in psychological counseling as may be directed by

11 the probation officer as part of the conditions of supervised

12 release? Do you understand that?

13           DEFENDANT TYMS: Yes, sir.

14           THE COURT: Okay. We talked about what the maximum

15 sentence is. But let's talk now about the Sentencing

16 Guidelines. As I am sure Mr. Greene has explained to you,

17 until not too long ago all of us, lawyers and judges, were

18 under the impression that the Sentencing Guidelines were what

19 we called mandatory. What that meant was that any

20 defendant -- any criminal defendant -- who either pleaded

21 guilty or was found guilty would have to sentenced within the

22 range that the Guidelines prescribe, unless there was some

23 special reason that permitted either going above or below the

24 Guidelines.

25           All of us got educated when the Supreme Court said,

"No, instead the Guidelines are advisory."  What that means is
that the Court has to make a determination about what the
Guidelines provide.  That's one step toward the ultimate
decision on sentencing.

Obviously, for example, if the Court makes a
mistake in setting the Guidelines, that could lead to
an improper sentence.  And indeed, if the Court does that,
that's something that either side can take up to a higher
court -- to the Court of Appeals -- and say, "The
judge sentenced the defendant the wrong way, either up or
down, because of the mistake that the judge had made."

Now because that's true, the procedure that we
follow is that what's in this plea agreement represents the
lawyers' best judgment, what they believe the Guidelines call
for.  And in this case there has been identified a flat-out
disagreement between the lawyers about what the Guidelines
work out to be.  And what that means is that -- well, before
it comes to me, your case gets assigned to a probation
officer.  The probation officer has the responsibility for
making his or her own determination of the Guidelines based on
the evaluation of the offense, how the Guidelines read,
and what your prior criminal history was.

Now that might or might not agree with the position
that either side has taken.  So the probation officer comes up
with a figure, and either side has the opportunity to object

1  to it, and it then comes to me.  It comes to me with

2  everybody's input.  And then, as I say, I have the

3  responsibility for deciding.  But mine, as I mentioned

4  earlier, is not the last word.  Because if my Guideline

5  determination is wrong, and therefore it gives rise to an

6  improper sentence, that can be taken up to a higher court.  Do

7  you understand that?

8          DEFENDANT TYMS:  Yes, sir.

9          THE COURT:  Let me --

10         MR. LEE:  Your Honor --

11         THE COURT:  Wait just a minute.  Wait just a minute.

12         Well, in this instance one of the paragraphs, 21(b),

13  contains a provision that says that you waive -- that is, that

14  you give up -- the right to appeal either the sentence or the

15  manner in which it's determined, including any term of

16  imprisonment and fine within the maximum.  Now what that means

17  is that the thing that I just talked about is kind of a

18  one-way street.  If the government thinks that I blew it, the

19  government can take it up to a higher court.  If you and your

20  lawyer think so, you can't.  Do you understand that's

21  the difference?  And they say that the reason for that

22  is because of the understanding that they reached with you.

23  Do you understand the difference on that?

24         DEFENDANT TYMS:  Yes, sir.

25         THE COURT:  Okay.  By the way, you also understand

that we don't have in the federal system the concept of
parole.  And what that means is that a prison sentence
basically is one that has to be served except for whatever
good time may be earned during the course of imprisonment.  Do
you understand that?

        DEFENDANT TYMS:  Yes.

        THE COURT:  Let's then talk about the alternative to
what we are now talking about -- and that is, the alternative
that we had been expecting to proceed with on Monday.  And
that is you have a constitutional right to a trial if you
don't plead.

        When we talk about a trial, we talk about a system
in which the people who decide whether you are guilty or not
guilty are a jury that's drawn at random from the community.
We have a lot of trials, as it happens, that are beginning on
Monday.  The jury room is going to be ordering a lot of people
taken at random off the voting lists.

        And if we had gone ahead with a trial, what would
have happened is that my minute clerk, who is not in today,
would have placed an order with the jury room.  They would
have the people come up -- we tentatively ordered I think 45,
so they would be taken at random from this bigger random
group.  And to make sure that the whole system is random, they
now have a computer that determines the order in which the
names are listed of the let's say 45 people.

1          So they come up here.  My minute clerk calls off the
2    names of the first 12 people.  They sit in that jury box over
3    there and we ask them a lot of questions.  We ask questions
4    that your lawyer has submitted on your behalf before now,
5    questions that the prosecutors had submitted, questions that I
6    think ought to be asked to make sure that we are going to get
7    a fair and impartial jury.

8          If we get a sense as a result of any of the answers
9    that people give that there is kind of a bias or prejudice
10   involved, or that they are otherwise incapable of rendering a
11   fair trial, we will automatically exclude anybody like that.
12   Very often, for example, with the kind of offense that we are
13   talking about here, there may be people who may have
14   difficulty in separating their distaste from their real job,
15   which is:  Did you do what is charged, and has it been proved
16   beyond a reasonable doubt?  If if get any kind of sense like
17   that, we knock those people out of the box automatically, both
18   literally and figuratively.

19          In addition to that, though, what we call "being
20   excused for cause," we have the system of challenges in
21   which both you and your lawyer on the one hand and the
22   government on the other can challenge people
23   without having to have any good reason.  They may have a good
24   reason or no reason at all.  There are only two exceptions.
25   That is, nobody can be challenged in that way because of that

person's race or color.  Nobody can be challenged in that if
way because the person is a man or because the person is a
woman.  But outside of that there are no restrictions on these
challenges.  The defense gets 10 of them, the government gets
a half dozen.

If anybody is excused either for cause or on one of
those challenges, they leave the jury box.  My minute clerk
then calls off the next names to fill in the vacant spots.
And we go through that process again and again until we get 12
people that nobody has objected to.  That's your jury.

And I always say that in an important sense the jury
are your judges as well.  And I say that because they are the
ones who decide whether you are to be found guilty or not
guilty.  And it takes a unanimous decision before any kind of
finding can be made.  And where, for example, you are facing
three charges here, they would have to make a
separate determination about each of those charges.

So you understand that's what we mean when we talk
about a jury trial?

DEFENDANT TYMS:  Yes, sir.

THE COURT:  Under the federal system, unlike the
state system, a defendant cannot insist on what's called a
"bench trial" -- that is, having a trial done by the
judge without a jury.  In the federal system, if the defendant
wants that he can ask, but the prosecutors can say "No."  Even

1 if both sides say "Yes," the Court can say "No."  And that

2 means that there is the possibility but not a guarantee of

3 what's called a bench trial.  Do you understand that?

4          DEFENDANT TYMS:  Yes.

5          THE COURT:  Either way though, with or without a

6 jury, the court procedures on trial are very similar.  They

7 always take place in this courtroom.  It's open.  The public

8 can come in, they can listen, they can watch.  It's always a

9 trial in which it's what we call a speedy trial.  Nobody can

10 have charges hanging over your head for an improper period of

11 time.

12          You are always entitled to have a lawyer.  Just as

13 Mr. Greene is here for you today, as you know he would be here

14 representing you at trial.  And importantly, it's always a

15 trial in which you are presumed to be innocent.  That

16 means that it's the government's burden to prove you guilty

17 by proper evidence beyond a reasonable doubt.  You don't have

18 to prove anything.  You and your lawyer can get together and

19 say, "Let the government prove it if they can."  You of course

20 have the right to offer evidence.  But the thing that I am

21 emphasizing is that you have no obligation to do that.

22          Now in if any trial the government witnesses have to

23 come into open court.  They get sworn, just as you have been

24 this afternoon.  They get on the stand over there.  You and

25 your lawyer have the opportunity to listen to them, to watch

them.  Your lawyer gets the right to cross-examine them, to
object to any evidence that the government might want to put
in, and as I indicated has a right to offer evidence for you.
For example, if you wanted to call a witness and the witness
was reluctant to show up, your lawyer could get a subpoena, a
court order, to require that person to come in.

You as the defendant stand in a very special
position.  You have what the law calls the "privilege against
self-incrimination."  That's one of those fancy terms
that means simply that you have an absolute right to decide,
"Yes, I will," or "No, I will not testify."  Nobody can
question that decision.  Nobody can say, "You know, if Mr.
Tyms really didn't do what he's charged with, he would get up
on the stand and tell us."  Our system doesn't work that way.
As a matter of fact, we always tell jurors that one thing they
may not consider is the fact that a defendant did not testify.

I guess the last thing I should mention about a
trial is that if you decided to go to trial and if you were
convicted, that could be taken up to a higher court.  You can
say, "Mistakes were made.  I should not have been convicted."
So you understand all of these things together make up the
package that we describe as a right to a trial.  You know
that?

DEFENDANT TYMS:  Yes.

THE COURT:  Now I gave you just now a very

long-winded explanation, but I did that deliberately.  Because
one thing that you have got to understand is that if you plead
guilty and I accept your plea, none of these things is going
to happen.  There is not going to be a trial.  None of the
other things that I have described would apply.  Instead what
would happen is that I would accept your guilty plea and then
later on sentence you on the basis of your guilty plea.  Do
you understand that?

        DEFENDANT TYMS:  Yes.

        THE COURT:  Okay.  The charge that you are
facing here is one that's in Count 1, to which you are
proposing to plead guilty.  It says that about June 23d of
last year, and continuing until about the latter part of
September of last year, both in Carol Stream and elsewhere
here in this Northern District of Illinois, you used what are
called "facilities and means of interstate and foreign
commerce.  That's a legal term that in this case is talking
about a cellular phone, cell phone.  And it talks about the
cell phone having access to a Canadian-based wireless
communication service.  And it charges that you knowingly
persuaded and induced and enticed a female minor who was under
18, who is labeled here as Victim A, to engage in sexual
activity for which you could be charged with a state law
criminal offense of what's called "aggravated criminal
sexual abuse."

1          And the charge goes on to say -- because you

2 remember I mentioned this business about the added ten years,

3 the consecutive sentence -- it goes on to say that in

4 violation of the statute, you committed that offense while

5 you were required by state law to registered as a sex

6 offender.  So that's the nature of the charge.

7          And I know that there has been a description here

8 on pages two through the top of page four of your conduct.

9 But I want to get just in your own words, if you would -- you

10 don't have to give all of the details at all, but enough so

11 that I can understand that you in fact are acknowledging

12 commission of the offense.  So why don't you tell me in your

13 own words what you did during this time frame beginning

14 about June 23d of 2007 and finishing up about September 25th,

15 and where you did that?

16          DEFENDANT TYMS:  Basically that I had communicated

17 with the victim through cell phone and through chatting.  That

18 we exchanged pictures in September, and that we had met at the

19 end of September and had sex.

20          THE COURT:  And is it accurate that you knew that

21 Victim A was not yet 18 years old?

22          DEFENDANT TYMS:  Yes, sir.

23          THE COURT:  Let me, if I may, ask the government,

24 because this is a matter that's technical but is essential

25 to -- by the way, where were you during this time frame?

1          DEFENDANT TYMS:  During the time frame we were

2    communicating back and forth, I was at my home.  But when we

3    met we were in Carol Stream.

4          THE COURT:  Where?

5          DEFENDANT TYMS:  In Carol Stream when we met.

6          THE COURT:  Okay.  And your home was where?

7          DEFENDANT TYMS:  In Union, Illinois.

8          THE COURT:  Okay.  Where is -- what county is Union

9    in?

10         MR. LEE:  McHenry County, your Honor.

11         THE COURT:  Okay.  I would like the prosecutor to

12   tell me what the government would be prepared to prove that

13   confirms that the facilities were means of interstate and

14   foreign commerce.  And Mr. Greene and Mr. Tyms, I want you to

15   listen to this, because I am going to ask whether you have any

16   question that the government would be able to prove this

17   element.

18         Go ahead.

19         MR. LEE:  The government would prove that both the

20   defendant and the victim in this matter both used cellular

21   telephones, which in and of themselves are facilities by means

22   of interstate commerce.  Both cell phones accessed a

23   wireless chat service that was run out of Canada.  So to send

24   messages to each other, they would access those servers in

25   Canada.

1          THE COURT:  They were using a Canadian access --

2          MR. LEE:  Yes.

3          THE COURT:  -- which brings into play then the

4  foreign commerce component?

5          MR. LEE:  Yes.  As well at least the victim's

6  cellular phone was made outside of the United States, in

7  China, and then transported to the United States.

8          THE COURT:  Mr. Greene, any question at all that the

9  government would be in a position to prove that component,

10  that element of the offense?

11          MR. GREENE:  There is no question about it, Judge.

12  I don't think they would have any difficulty in doing that.  I

13  don't now agree with it.  But what I do agree with and don't

14  agree with doesn't really matter here.  I think they could

15  prove that.

16          THE COURT:  Well, the question --

17          MR. GREENE:  The reason that I said that is

18  because it's a wire.  It's not like -- travel as the world

19  travels in interstate commerce is designed statutorily.

20  The framers meant travel in interstate commerce, did not

21  include wire.

22          THE COURT:  But the framers thought that there was

23  an ether, you know as well.  And so it was  possible to

24  communicate across the state line in foreign commerce without

25  wires, even in Revolutionary days.

1           MR. GREENE:  All the more concern, Judge.

2           THE COURT:  So you don't have any, I gather, you

3  don't have any doubt that it could be proved for legal

4  purposes beyond a reasonable doubt?

5           MR. GREENE:  No, sir.

6           THE COURT:  All right:  And Mr. Tyms, you

7  understand the same, I gather --

8           DEFENDANT TYMS:  Yes, sir.

9           THE COURT:  -- is that right?

10          I think that covers each -- well, let me ask you.

11  You have read over the more detailed description that's

12  contained over here on pages 2 and 3 and going over to the top

13  of page 4?

14          DEFENDANT TYMS:  Yes.

15          THE COURT:  And is it also accurate that you

16  committed the offense while you were required under law to

17  register as a sex offender?

18          DEFENDANT TYMS:  Yes, sir.

19          THE COURT:  It seems to me that that establishes

20  each of the elements of the offense, unless any of

21  counsel thinks that there is any kind of gap.

22          MR. LEE:  No, your Honor.

23          THE COURT:  A gap in the ether, that is.

24          MR. LEE:  Your Honor, the ether itself has no gaps.

25          THE COURT:  I know.  How do you then plead to the

1 charge, guilty or guilty?

2          DEFENDANT TYMS:  Guilty, sir.

3          THE COURT:  I will find that defendant Marcus Tyms

4 is fully competent, is capable of entering an informed plea,

5 and is aware of the nature of the charge and also the

6 consequences of the plea.  I further find that the guilty plea

7 is both knowing and voluntary, and that it is supported by

8 an independent basis in fact that contains each of the

9 essential elements of the offense.  That being true, I will

10 accept the plea and I adjudge Mr. Tyms guilty of the offense

11 charged in Count 1.

12          Now Mr. Tyms, twice I have referred to the probation

13 officer.  Now I want to cover something along those lines, and

14 that's this.  Whichever version of the Guidelines might be

15 accepted, whether your counsel's version as set out in the

16 plea agreement or the government's version or maybe one the

17 probation officer would come up with, one important

18 component of the Guideline calculation is what's called the

19 acceptance of responsibility. I say that's important

20 because that works out roughly to make a difference of about

21 25 percent in what the Sentencing Guideline range is.

22          Now pleading guilty is one step toward acceptance of

23 responsibility, but not the only one.  And because the

24 probation officer is going to give us a very thorough report

25 about you -- a presentence investigation report that tells us

a lot about your finances, your health, your family, your
prior criminal record, your employment history, everything --
by definition you are going to have to provide a lot of that
information.

So two things I want to tell your.  One, any time
you are asked to meet with the probation officer, you have the
right to have Mr. Greene along with you to assist you.  The
second, which is related to that, is that if anybody were to
be unwise enough -- any defendant were unwise enough -- for
example, to provide false information to the probation
officer or otherwise make it difficult for the probation
officer to perform his or her function, that could result
in losing the benefit of acceptance of responsibility, which
would be a serious aspect in terms of the advisory part of the
Sentencing Guidelines.  So that too is something that I
will expect you will want to confer with your lawyer about.

Now the recommendation of the probation office, and
indeed our court rule, calls for a period of 63 days between
the time of a guilty finding and the date of sentencing,
which under these circumstances would bring us I think to
February 6th -- right.  It happens that I already have
a sentencing on February 6th, but I believe that I can do it
in the following week.  That's the week that goes from
February 9th through February 13th.  Is there anything that
counsel might prefer in that time frame, if you are available,

1  that is?

2          MR. GREENE:  February 10th, Judge.

3          THE COURT:  Tuesday?  Is that okay?

4          MR. LEE:  That would work fine with the government.

5          THE COURT:   All right.  Sentencing then is set

6  for 1:15 -- let me get a pen here -- on Tuesday,

7  February 10th.  And at that time, as I indicated at the

8  beginning, it would be anticipated that pursuant to the plea

9  agreement the government would move for dismissal of Counts 2

10 and 3.  And indeed the conduct that is charged there has in

11 fact been taken into account in connection with the

12 description of the actions that are described.

13         Now I think that covers everything, does it not?

14         MR. GREENE:  I think so, Judge.

15         MR. LEE:  Yes, your Honor.

16         MR. GREENE:  I think so, Judge.

17         THE COURT:  All right.  Thank you.

18     (WHICH WERE ALL OF THE PROCEEDINGS HAD AT THE HEARING OF
       THE ABOVE-ENTITLED CAUSE ON THE DAY AND DATE AFORESAID.)
19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2
    I HEREBY CERTIFY that the foregoing is a true and correct
3   transcript from the report of proceedings in the
    above-entitled cause.
4
    /S/JESSE ANDREWS
5   JESSE ANDREWS, CSR
    OFFICIAL COURT REPORTER
6   UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT OF ILLINOIS
7   EASTERN DIVISION
    DATED: January 5, 2009
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25